**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER DACCHILLE, | : | |
| | : | Civil Action No. 10-5504 (WJM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WOODBRIDGE TOWNSHIP, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Peter Dacchille
South Woods State Prison
215 Burlington Road South
Bridgeton, New Jersesy 08302

**MARTINI**, District Judge

     Plaintiff Peter Dacchille, a convicted prisoner confined at South Woods State Prison in Bridgeton, New Jersey, seeks to bring this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

     At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff asserts that he was arrested on October 23, 2008, by three police officers employed by the Woodbridge Township Police Department:  Detective Timothy Laughery, Detective Christopher Lyons, and Patrolman Santiago Tapia.  Plaintiff alleges that he was arrested pursuant to warrants charging him with burglary, criminal mischief-damage to property, and theft by unlawful taking.  Plaintiff alleges that these warrants were procured by Detective Laughery and Patrolman Tapia based upon information provided by his co-defendant Joseph Cicero; Plaintiff also alleges that these three defendants knew the information to be false.  Plaintiff alleges that Detectives Laughery and Lyons knew Cicero's information to be false because (a) Lyons gave the information in exchange for not going to jail for drug possession and because (b) Detective Lyons, with the knowledge of Detective Laughery, assaulted Cicero in order to obtain incriminating information against Plaintiff.

Plaintiff alleges that, in the course of the arrest, Detective Timothy Laughery and Patrolman Santiago Tapia beat Plaintiff in the head, causing his ears to bleed, and kicked him, causing his testicles to swell to three times their normal size, but refused to take Plaintiff for medical treatment.

Plaintiff asserts that Detective Timothy Laughery lied to the grand jury, providing information acquired from Joseph Cicero, though Detective Laughery knew that information to be false.  Plaintiff alleges that Officer Tapia knew in advance that Detective Laugher was going to provide false testimony to the grand jury.

Plaintiff alleges that the Township of Woodbridge and the Woodbridge Township Police Department failed to adequately train and/or supervise these police officers.  Plaintiff alleges generally that the Township of Woodbridge knew that these defendants had a pre-existing "temperament of illicit behavior" and that the Internal Affairs department refused to accept Plaintiff's report of the police officers' behavior in connection with his arrest.  Plaintiff alleges that the policy and practices of the Woodbridge Township Police Department have been described in various investigations and commissions.

Plaintiff asserts that the Middlesex County Prosecutor's Office, and prosecutors Bruce J. Kaplin and Christine M. D'Elia, presented the case against him to the grand jury, obtained indictments, and prosecuted him, knowing that the allegations against Plaintiff were false, because they were based on the statement of Joseph Cicero, which he gave after being assaulted by police and in order to avoid going to jail on drug charges. Plaintiff alleges that Prosecutor D'Elia learned the

circumstances under which Cicero gave his statement during a meeting with Cicero the day after Plaintiff's arrest.

As relief, Plaintiff asks for the suspension of the defendants from employment until this matter is resolved, because of the nature of the allegations, and for this Court to intervene into Plaintiff's false conviction.[1]  The Court construes the Complaint as seeking all appropriate relief.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in</u> <u>forma</u> <u>pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in</u> <u>forma</u> <u>pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

_____

[1] To the extent Plaintiff seeks to challenge the lawfulness of his conviction or current confinement, such a challenge must be brought via a petition for writ of habeas corpus, following exhaustion of state remedies.  <u>See</u>, <u>e.g.</u>, 28 U.S.C. § 2254.

4

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim

5

requires a complaint with enough factual matter (taken
as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

6

Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by

7

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

> Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the

10

> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

## IV.  ANALYSIS

### A.  False Arrest

Plaintiff alleges that Defendants Laughery, Lyons, and Tapia, obtained arrest warrants and arrested him based upon information obtained from Plaintiff's co-defendant Joseph Cicero.

11

Plaintiff alleges that these defendants knew that the incriminating information was false because it was obtained through assault and because it was given in exchange for not going to jail on drug charges.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  Lind v. Schmid, 67 N.J. 255, 262

12

(1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman).  See also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[2]

---

[2] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

Here, the facts alleged are not sufficient to raise Plaintiff's alleged right to relief above a speculative level. The fact that Cicero may have given police information implicating Plaintiff in various crimes in exchange for leniency with respect to his own criminal behavior does not render that information obviously false. Nor, no matter how reprehensible the tactic, does the use of force in interrogation render the information obtained obviously false.[3] The facts alleged, accepted as true, do not show that the officers acted with knowledge that Cicero's statements were untrue or that Plaintiff was factually innocent of the charged crimes. This claim will be dismissed.

B.    Excessive Force in Arrest

Plaintiff alleges that Detective Timothy Laughery and Patrolman Santiago Tapie beat him in the head and body, causing serious injuries for which he did not receive medical treatment.

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated."

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a

---

[3] In this regard, the Court notes that Plaintiff fails to provide any details regarding the alleged "assault."

14

'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), quoted in Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor, 490 U.S. 386, 396 (1989).  Proper application of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." <u>Graham v. Connor</u>, 490 U.S. at 396; <u>quoted in</u> <u>Groman v.
Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).
Ultimately, "the question is whether the officers' actions are
'objectively reasonable' in light of the facts and circumstances
confronting them, without regard to their underlying intent or
motivation." <u>Graham</u>, 490 U.S. at 397.

Here, Plaintiff's allegations are sufficient to permit the
excessive force claim to proceed as against Defendants Laughery
and Tapia.

C.   <u>Claim of Malicious Prosecution</u>

Plaintiff alleges that the police officers and prosecutors
prosecuted him with knowledge that he was innocent of the charged
crimes.

In order to state a <u>prima facie</u> case for a § 1983 claim of
malicious prosecution pursuant to the Fourth Amendment, a
plaintiff must establish the elements of the common law tort as
it has developed over time, <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579
(3d Cir. 1996), and that there has been a seizure, <u>Gallo v. City
of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998); <u>Luthe v. Cape
May</u>, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law,
the common law tort elements of a malicious prosecution action
arising out of a criminal prosecution are:  (1) the criminal
action was instituted by the defendant against the plaintiff,
(2) it was actuated by malice, (3) there was an absence of

probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  Lind v. Schmid, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'"  Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994).

Here, Plaintiff has alleged no facts that the prosecution was instituted by malice nor, as discussed above, do the facts alleged regarding the interrogation of Cicero establish a lack of probable cause.  Moreover, the criminal proceeding was not terminated favorably to Plaintiff.  He was convicted on at least some of the counts charged.  This claim will be dismissed.

D.   Claim of Perjury Before Grand Jury

Plaintiff alleges that the indictment against him was based upon perjured testimony by Defendant Laughery before the grand jury.  He also alleges that Officer Tapia knew in advance that Laughery intended to present perjured testimony.

Witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony.  See Briscoe v. LaHue, 460 U.S. 325, 341-46 (1983).  That immunity extends to investigators testifying in a grand jury proceeding.  Kulwicki v.

17

Dawson, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992).  Accordingly,
this claim will be dismissed.

E.   Claims Against Prosecutors

Plaintiff alleges that the Middlesex County Prosecutor's
Office, and prosecutors Bruce J. Kaplin and Christine M. D'Elia,
presented the case against him to the grand jury, obtained
indictments, and prosecuted him, knowing that the allegations
against him were false, because of the circumstances under which
Cicero implicated Plaintiff.

As noted above, Plaintiff's description of the interrogation
of Cicero is not sufficient to show that Cicero's statement was
obviously false.  For that reason, alone, the malicious
prosecution claim cannot proceed as against the various
prosecutorial defendants.

In addition, "a state prosecuting attorney who act[s] within
the scope of his duties in initiating and pursuing a criminal
prosecution" is not amenable to suit under § 1983.  Imbler v.
Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's
appearance in court as an advocate in support of an application
for a search warrant and the presentation of evidence at such a
hearing are protected by absolute immunity.  Burns v. Reed, 500
U.S. 478, 492 (1991).  Similarly, "acts undertaken by a
prosecutor in preparing for the initiation of judicial
proceedings or for trial, and which occur in the course of his

18

role as an advocate for the State, are entitled to the protections of absolute immunity." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).  Here, Plaintiff's claims against the prosecutorial defendants arise out of the quintessential prosecutorial functions and the prosecutorial defendants are entitled to absolute immunity.

Finally, in addition to being entitled to absolute prosecutorial immunity, the Middlesex County Prosecutor's Office is immune from suit in this Court under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984).

Section 1983 does not override a state's Eleventh Amendment
immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

To determine whether Eleventh Amendment immunity applies to
a state agency, a court must consider three factors:  (1) the
source of the agency's funding - i.e., whether payment of any
judgment would come from the state's treasury, (2) the status of
the agency under state law: and (3) the degree of autonomy from
state regulation.  See Flitchik v. New Jersey Transit Rail
Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied,
493 U.S. 850 (1989).  In Coleman v. Kaye, 87 F.3d 1491 (3d Cir.
1996), the U.S. Court of Appeals for the Third Circuit considered
all of these factors in the context of a New Jersey county
prosecutor's office and recognized that county prosecutorial
offices conduct two distinct sets of functions: (1) the
administrative functions of operating their offices and (2) the
classic law enforcement and investigative functions for which
they are chiefly responsible.  The Third Circuit's analysis
culminated in the conclusion that "when [New Jersey county]
prosecutors engage in classic law enforcement and investigative
functions, they act as officers of the state."  Id. at 1505.

Here, the claims against the Middlesex County Prosecutor's
Office arise out of classic law enforcement functions, and are
barred from suit in federal court under the Eleventh Amendment.

E.    Claims Against Woodbridge Township and Police Department

Plaintiff alleges that the Township of Woodbridge and the
Woodbridge Township Police Department failed to adequately train
and/or supervise the police officers who arrested him.  He
alleges that these officers had a pre-existing "temperament of
illicit behavior" and that other investigations and commissions
have described "deliberate indifference" by the police
department.

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,

21

1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990), <u>quoted in</u> <u>Blanche Rd. Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 269 n.16 (3d Cir.), <u>cert. denied</u>, 516 U.S. 915 (1995), and <u>quoted in</u> <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. <u>Monell</u>, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [<u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of

the policymaker itself."  Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has failed to allege facts showing a policy
or custom encouraging false arrest, excessive force, or malicious
prosecution on the part of the Woodbridge Township Police
Department or the Township of Woodbridge.  Plaintiff's claims
that other investigators have concluded that there is "deliberate
indifference" by the Police Department are too vague and
conclusory to show a policy or custom encouraging
unconstitutional conduct.  To the contrary, Plaintiff has alleged
facts showing only that two individual officers used excessive
force in arresting him.  This claim will be dismissed.

## V.  CONCLUSION

For the reasons set forth above, the claim for excessive
force in arrest may proceed as against Detective Timothy Laughery
and Patrolman Santiago Tapia.  All other claims will be
dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to
state a claim.  However, because it is conceivable that Plaintiff
may be able to supplement his pleading with facts sufficient to

overcome some of the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[4]

An appropriate order follows.

s/William J. Martini

_____
William J. Martini
United States District Judge

Dated: 10/7/11

---

[4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

24